UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:08-CR-46 |
| | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| ALFREDO BARBA, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.

§ 636(b) for disposition or report and recommendation regarding disposition by the District Court,

as may be appropriate.  On February 25, 2009, this matter came before the Court for a hearing on

the Motion to Dismiss Count Three [Doc. 120] filed by Defendant Alfredo Barba ("the Defendant").

Assistant United States Attorney Tracee Plowell was present representing the Government.

Attorney Sean Lewis was present representing the Defendant, who was also present.

At the conclusion of the hearing, the parties were given until March 20, 2009, in which to

file supplemental briefs addressing the issues raised at hearing.  The Defendant filed a motion to

extend the deadline for supplementing the hearing [Doc. 134], as did the Government [Doc. 136].

The Court granted the requests for extension and gave the Defendant up to and including April 7,

2009, in which to file his supplemental brief.  The Government was given until April 14, 2009, to

respond, and the Defendant was permitted to make a final reply on or before April 20, 2009.

In compliance with these revised deadlines, the Defendant filed his supplemental brief [Doc. 140] on April 7, 2009; the Government responded [Doc. 142] on April 14, 2009; and the Defendant made his final response [Doc. 145] on April 20, 2009. Thus, the motion was ripe for adjudication and was taken under advisement on April 21, 2009.

## I. FINDINGS OF FACT

Neither party presented testimony at the hearing. The Defendant offered to testify to certain facts, but the Court took the Defendant's proffers on these facts as true and considered them in its analysis, as noted below. The Defendant submitted numerous exhibits to the hearing, including: documents from the Defendants initial entry into the United States; the documents from his 1998 proceedings before the immigration judge; his 2002 change of plea agreement; affidavits from his family members regarding his good character, his ties to the community, and their willingness to aid him in his efforts to remain in this country; and birth certificates for his two daughters, who were born in Tennessee. The Defendant has also submitted to the Court a partial transcript of the deportation proceedings held December 30, 1998. [Doc. 140-1]. Based upon the arguments presented at hearing, the parties' memoranda, and the Court's review of the exhibits to the hearing and the supplemental exhibits, the Court finds the following facts:

The Defendant was born in Mexico on July 25, 1969, and is a citizen of Mexico. On March 14, 1976, the Defendant entered the United States as a permanent resident. On February 14, 1992, the Defendant was convicted in the 357th District Court for Cameron County, Texas, of driving while intoxicated ("DWI") for an incident that occurred on October 19, 1991. On March 19, 1994, the Defendant was convicted of a second DWI offense in the 357th District Court for Cameron County, Texas, for an incident that occurred on or about April 22, 1993. A notice to appear, Exhibit

2

5, which informed the Defendant that he was deportable, was issued on October 20, 1998, and a hearing was conducted on December 30, 1998, in Huntsville, Texas. On December 30, 1998, Immigration Judge Jimmie Lee Benton ordered the Defendant removed from the United States as an aggravated felon based upon the DWIs from Texas. The Order informed the Defendant that an appeal of the decision had to be filed on or before January 29, 1999.

On January 25, 1999, the Defendant prepared an appeal of the decision and requested postage at the detention center where he was housed. The Defendant's appeal was postmarked and in the mail on January 27, 1999. On February 1, 1999, the Board of Immigration Appeals ("BIA") received the Defendant's appeal. On March 5, 1999, the BIA sent the Defendant a notice that his appeal had been rejected because it was untimely.

Since his deportation in early 1999, the Defendant has attempted to enter or entered the United States on four different occasions. On May 11, 1999, the Defendant either illegally re-entered or attempted to illegally re-enter the United States at Hidalgo, Texas. On July 14, 2000, the Defendant was stopped at the Gateway Point of Entry near Brownsville, Texas, and was denied entry to the United States. On May 2, 2002, the Defendant pled guilty in this district to an illegal re-entry in violation of 8 U.S.C. § 1326, for re-entering the United States on January 8, 2002. Finally, on July 1, 2004, the Defendant either illegally re-entered or attempted to illegally re-enter the United States at Laredo, Texas.

On February 20, 2008, a grand jury returned a single count Indictment [Doc. 3] in Case 3:08-CR-030, alleging that the Defendant was an alien, who having been previously deported from the United States, subsequent to a conviction for the commission of an aggravated felony, did knowingly and unlawfully reenter the United States without the consent of the Attorney General of

3

the United States and was found within the United States on February 18, 2008, in violation of 8

U.S.C. § 1326(a) and (b)(2). The Defendant was indicted on drug charges in the instant case on

April 8, 2008, and on September 26, 2009, the Superseding Indictment [Doc. 95] was filed in this

case. The Superseding Indictment added an illegal re-entry charge identical to the one from Case

3:08-CR-030 to the instant case, and the Indictment in Case 3:08-CR-030 was dismissed.

## II. POSITIONS OF THE PARTIES

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure,[1] the Defendant moves to

dismiss Count Three of the Superseding Indictment, which charges him with illegal re-entry to the

United States in violation of 8 U.S.C. § 1326(a) and (b)(2). [Doc. 120]. The Defendant alleges his

1998 deportation order serves as a predicate element of Count Three, and he seeks to collaterally

attack the deportation order issued December 30, 1998, by Immigration Judge Benton ("the

deportation order"). The Defendant seeks to collaterally attack the deportation order on due process

grounds and on the grounds that the Immigration Court that heard his case erroneously characterized

his DWI offenses as aggravated felonies.[2]

---

[1] In his motion to dismiss the Defendant moves for dismissal pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 addresses plea bargains, and the subsections cited by the Defendant specifically address withdrawing pleas and the finality of pleas. The Court will address the effect of the Defendant's 2002 plea to illegal reentry in its analysis, and will treat the Defendant's motion to dismiss as properly lodged under Rule 12(b)(3)(B).

[2] The Defendant's substantive argument is that his deportation from the United States after conviction for a DWI in Texas was invalid because 8 U.S.C. § 1227(a)(2)(A) allows for deportation where the alien has committed an aggravated felony. An aggravated felony is defined in 8 U.S.C. § 1101(a)(43)(F) as a crime of violence as defined in 18 U.S.C. § 16. After the Defendant's deportation, the United States Supreme Court and Fifth Circuit Court of Appeals held that violations of DUI/DWI statutes are not "crimes of violence" as described in 18 U.S.C. § 16. Leocal v. Ashcroft, 543 U.S. 1 (2004) (holding that state DUI offenses, which either do not have a *mens rea* component or require only a showing of negligence are not crimes of violence under 18 U.S.C. § 16); United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001) (holding that felony DUI under Texas law is not an aggravated felony for purposes of 18 U.S.C. § 16 and, thus, the previous deportation could not be used as grounds for enhancing the Defendant's sentence).

However, the Defendant is not automatically entitled to collaterally attack the prior deportation order. The Defendant concedes that collateral attack of the deportation order is appropriate where the criteria contained in 18 U.S.C. § 1326(d) have been met. Nonetheless, at the hearing, the Defendant also argued that under United States v. Mendoza-Lopez, 481 U.S. 828 (1987), a showing of due process violation could relieve the Defendant from his burden of demonstrating that each of the criteria contained in 18 U.S.C. § 1326(d) has been met. For the reasons more fully explained below, the Defendant maintains that he can make a showing to satisfy each of the criteria contained in 18 U.S.C. § 1326(d), or a showing as to why the specific statutory criteria should be excused, and that, therefore, he should be allowed to collaterally attack the deportation order.

It is the Government's position that the Defendant can collaterally attack the deportation order only after satisfying each of the criteria contained in 18 U.S.C. § 1326(d). The Government argues that there is no way around the requirements contained in 18 U.S.C. § 1326(d), and the Government alleges that the Defendant is unable to meet his burden under 18 U.S.C. § 1326(d). Thus, the Government maintains that the Defendant cannot collaterally attack the deportation order. The Government argues, in the alternative, that res judicata bars any collateral attack on the 1998 deportation order, because the Defendant pled guilty to another re-entry charged under § 1326 in 2002.

In response to the Government's res judicata argument, the Defendant admits that he pled guilty to illegal re-entry under 8 U.S.C. § 1326 before the Honorable Judge Leon Jordan, United States District Judge for the Eastern District of Tennessee, in 2002. See Case No. 3:02-CR-08, Courtroom Minutes for Change of Plea Hearing held February 19, 2002 [Doc. 12]. However, the

5

Defendant argues that his plea was not knowing and that a guilty plea cannot preclude a criminal defendant from relitigating an issue in a subsequent criminal proceeding.

## III. ANALYSIS

For the reasons more fully explained below, the Court finds that, the Defendant has failed to met of proving all of the prerequisites to collateral attack contained in § 1326(d). Accordingly, the Court **RECOMMENDS** that the Defendant's Motion to Dismiss **[Doc. 120]** be **DENIED**.

### A. Collateral Attack of the Deportation Order

The Court of Appeals for the Sixth Circuit has previously recognized that a defendant charged with unlawfully reentering the United States after having been ordered deported may not challenge the validity of the underlying deportation order unless the three statutory conditions contained in 8 U.S.C. § 1326(d) are satisfied. United States v. Martinez-Rocha, 337 F.3d 566, 568 (6th Cir. 2003). A defendant must demonstrate that:

> (1) [he or she] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Because of the conjunctive "and," if a defendant fails to establish any one of the requirements listed in § 1326(d), then the collateral attack will not be permitted. Section 1326(d) is a codification of the Supreme Court's decision in Mendoza-Lopez, 481 U.S. 828 (1987).

6

*1. Exhaustion of Administrative Remedies*

Although a defendant is charged with demonstrating all three of the criteria contained in § 1326(d), the Court should address the administrative remedies requirement contained in (d)(1) first, before determining whether the other statutory criteria have been met. See United States v. DeLeon, 444 F.3d 41, 45 (1st Cir. 2006) ("In performing collateral attack analysis on validity of underlying deportation order supporting illegal reentry charge, the court ordinarily should address the initial test of exhaustion of administrative remedies before going on to determine whether other statutory prerequisites to relief are also satisfied."). The issue before the Court in this case is whether the Defendant's failure to timely file his appeal to the December 30, 1998 deportation order constitutes a failure to exhaust his administrative remedies. The Government argues it does. The Defendant argues he is excused from this failure due to circumstances involving the alleged delay in mailing his appeal.

The Court of Appeals for the Sixth Circuit in United States v. Martinez-Rocha, 337 F.3d 566 (6th Cir. 2003), analyzed a defendant's burden to prove administrative exhaustion. The defendant in Martinez-Rocha, like the Defendant in the present case, intended to collaterally attack his deportation on the grounds that his Kentucky state court conviction for driving under the influence was not an aggravated felony. 337 F.3d at 567. The district court determined that the defendant had made a knowing waiver of his administrative remedies, which the Court of Appeals confirmed on review. Id. at 569. Because the defendant waived his administrative remedies rather than exhausting them, the district court held that he failed to satisfy § 1326(d)(1) and was, therefore, barred from collaterally attacking the prior deportation order. Id. at 570. Because the defendant in Martinez-Roche failed to meet his burden of proving exhaustion of administrative remedies, no

analysis of the judicial review and fundamental fairness prerequisites was necessary.  <u>See id.</u>; <u>see also</u> <u>United States v. Johnson</u>, 391 F.3d 67, 77 (2d 2004) ("In view of [the Defendant's failure to demonstrate exhaustion of his administrative remedies], we have no need to pass on [the defendant's] contention that he has demonstrated fulfillment of the second and third requirements of Section 1326(d) . . . .).

The Court recognizes that the analysis in <u>Martinez-Rocha</u> is, in part, distinguishable factually from the present case, because in <u>Martinez-Rocha</u>, the defendant waived his right to appeal at the time of the hearing rather than simply failing to file a timely appeal.  Accordingly, the Court has considered other cases and finds <u>United States v. Aragon-Ruiz</u>, 551 F. Supp 2d 904 (D. Minn. 2008), to be a persuasive authority because of its strong factual similarity to the present case.  In <u>Aragon-Ruiz</u>, the defendant claimed that a number of circumstances effectively eliminated his right to seek administrative review.  <u>Id.</u> at 919.  Specifically, he maintained that the correctional facility in which he was housed had prevented him from appealing and exhausting his administrative remedies by delaying delivery of certain forms which informed him of the deadline for his administrative appeal.  <u>Id.</u>  On September 27, 2004, a form stating that the defendant in <u>Aragon-Ruiz</u> was required to respond within ten calendar days (or thirteen calendar days in the case of service by mail) was sent, via certified mail, to the correctional facility at which the defendant was housed.  The Form instructed, "**The Service must RECEIVE your response within that time period**."  <u>Id.</u> (emphasis in original).  That defendant maintained that the form was not given to him until October 9, 2004, fifteen days after the service date.  <u>Id.</u>  The defendant executed the form on October 9, 2004, and it was received by the Immigration and Customs Enforcement ("ICE") on October 13, 2004.  Thus, the Defendant failed to make a timely appeal.

8

Despite the allegations of delay by correctional authorities, the court in Aragon-Ruiz held that the defendant had failed to demonstrate the statutory prerequisite of administrative exhaustion. Id. at 921. The court noted that no facts or testimony were presented as to when the defendant actually received the letter. Id. at 920. The court found that the only testimony at the hearing was that the defendant signed the form on October 9, 2004, and that it was received by ICE on October 13, 2004. Id. The court also noted that the defendant did not pursue other avenues for appeals such as the United States Court of Appeals. Id. at 921. The court in Aragon-Ruiz found that the defendant had not presented any evidence to support his arguments of futility, coercion, or his lack of understanding about the appeal, and accordingly, the court concluded that the defendant had not met his burden of proving that he had either exhausted all of his remedies or that he was prevented from doing so. Id.

The court's decision in Aragon-Ruiz that an alien who does not appeal a deportation order to the BIA has not extinguished his or her administrative remedies is consistent with the holdings of other courts in this Circuit that have addressed the question. See United States v. Hasanaj, 2005 WL 1774097 (E.D. Mich. 2005). It also comports legally with the Court of Appeals for the Sixth Circuit's waiver analysis in Martinez-Rocha, and it comports with decisions outside this Circuit addressing a defendant's failure to timely file an appeal, see United States v. Roque-Espinoza, 338 F.3d 724, 728-29 (7th Cir. 2003) (finding that the defendant had failed to exhaust his administrative remedies where he was advised of the availability of an appeal at his hearing, indicated he would appeal, but failed to do so and finding the possible futility of such appeal did not excuse the defendant's failure to file).

In the present case, the immigration judge gave the Defendant the deportation order, Exhibit 1, to memorialize the oral decision in favor of removal that was rendered on December 30, 1998. The order included a notation that the Defendant's appeal was due by January 29, 1999. This notation was handwritten and was almost twice the size of the other text on the page. A certificate of service attached to the order verifies that the deportation order was given to the Defendant on December 30, 1998. The General Instructions,[3] Exhibit 3, for completing a notice of appeal were supplied to the Defendant, and this document instructed the Defendant numerous times that his appeal was to be received, not postmarked or merely completed, within thirty days of the order. Under the heading "When to Appeal," the General Instructions state:

> • You must send the Notice of Appeal so that it is **received** by the Board within thirty (30) calendar days after the Immigration Judge's oral decision . . . . [emphasis in original]

> • *Simply mailing the Notice of Appeal within the time limit may not insure that the Notice of Appeal is timely received by the Board. If your Notice of Appeal is received outside of the time limit, it will be dismissed.* [emphasis added]

Ex. 3 at 1 (bulleting in the original). Further down the same page, the Defendant was again instructed, "An appeal is not properly filed unless the Notice of Appeal and all required documents are received within thirty (30) calendar days after the Immigration Judge's oral decision . . . ."

The Defendant does not argue that he did not understand the form. [Doc. 131 at 2]. Instead he maintains that he timely prepared his Notice of Appeal, Exhibit 2, but the detention facility in which he was housed delayed mailing it. [Doc. 131 at 2]. The Defendant maintains that his Notice

---

[3]The General Instructions is a two page document in which all the text appears under easy to distinguish headings in bulleted format. It is not unreasonably dense or complicated.

of Appeal was not late because he was in INS custody and, alternatively, because his applying for postage within the detention facility was timely.

At the hearing, the Defendant submitted his Notice of Appeal and noted that it was signed on January 25, 1999. The Defendant also submitted an "Indigent Postage/Supplies Request," Exhibit 11, which is dated January 25, 1999, and an envelope, Exhibit 12, showing that the Notice of Appeal was postmarked "PM, 27 Jan. 1999." In addition, the Defendant submitted an affidavit from the detention center at which he was housed in January 1999, Exhibit 13, stating that there were no further records of inmate requests for supplies (i.e. stamps) by the Defendant. The Defendant further proffered that he would be willing to testify that he submitted his Notice of Appeal to staff at the detention center on January 25, 1999. However, the Defendant admitted that he had no proof that detention facility staff had intentionally delayed his mailing, interferred with his mailing, or acted in bad faith to prevent the mailing. Indeed there has been no actual showing of delay on this point at all.

Based on the foregoing, the Court finds that the Defendant did not exhaust his administrative remedies and has failed to demonstrate any official interference or malfeasance that would require the Court to overlook the failure to exhaust. The Court accepts the Defendant's proffer that he submitted the Notice of Appeal to staff at the detention center on January 25, 1999, when he contemporaneously requested postage. However, as the General Instructions stated, no step toward delivering the Notice of Appeal to the BIA, short of its actual receipt, suffices as meeting the filing deadline; the BIA must receive the Notice of Appeal within the deadline. January 25, 1999 was a Monday, and the Court can easily envision a scenario where the Defendant gives the Notice to his pod supervisor or another staff member the afternoon or evening of January 25, 1999, and the

11

postage placed on the envelope and placed for outgoing mail on January 26, 1999, but not placed in the mail stream until January 27, 1999. The Court can also envision the letter leaving the facility the next day, January 26, 1999, and not being placed in the mail stream until January 27, 1999, based on postal procedures and not the detention center's procedures. There is simply no proof to support the Defendant's position on this issue and the burden is the Defendant's.

It appears completely reasonable to the Court that a letter leaving Texas on Wednesday afternoon, January 27, 1999, might or might not be delivered to the BIA in Virginia, outside of Washington D.C., by January 29, 1999, or until Saturday, January 30, 1999. In the latter case, it would not be received until the BIA reopened on Monday February 1, 1999, but would have been late in any event. The time that passed between the Defendant's completion of the Notice and its receipt at the BIA is reasonable on its face and does not per se establish any interference by officials, intentional or otherwise, and as previously stated, the Defendant has not presented any evidence of such behavior.[4]

The Defendant should have considered the time necessary for the Notice to travel through the detention center and in the stream of postage and should have initiated the mailing process more

---

[4]In his final filing, the Defendant states:

> The defendant denies that "there is no evidence in the record" that would show that the prison did not negligently or deliberately delay mailing of the appeal to the BIA. In fact, Mr. Barba has proffered that he will testify that other aliens in removal proceedings were at that facility. That the ultimate delay in the mailing was not solely in the control of the government, and that the mailing was in fact delayed, is probative of the fact of negligence or deliberate delay.

[Doc. 145 at 5]. While the meaning of this statement is not clear to the Court, the Court notes that evidence that other aliens were at the facility in no way establishes that bad faith delay was undertaken by staff at the facility.

12

than a mere four days before the Notice of Appeal was required to be received. The Defendant offers no explanation for his failure to sign his Notice of Appeal, acquire postage, and begin mailing more than four days prior to the due date. The BIA could not have been more clear in its instructions that notices that are not received within the time allotted would be denied. Consistent with these warnings and in light of the Notice's receipt on February 1, 1999, the BIA denied the Defendant's untimely appeal.

The Court finds that by filing an untimely appeal the Defendant failed to exhaust his administrative remedies. The administrative remedies prerequisite in Section 1326 is intended to allow the administration best equipped for deciding immigration cases to make such decisions and to allow a final judgment to stand where an alien fails to avail himself or herself of these remedies. The Defendant failed to avail himself of these remedies in a timely fashion and did not exhaust his administrative remedies as required by 8 U.S.C. § 1326(d)(1).

*2. Judicial Review*

Having found that the Defendant failed to exhaust his administrative remedies as required under § 1326(d)(1), analysis of whether the Defendant was denied judicial review under § 1326(d)(2) is not necessary. However, the Defendant has cited the Court to a number of cases that will excuse failure to exhaust one's administrative remedies where there was a deprivation of judicial review. See United States v. Lopez, 445 F.3d 90 (2d Cir. 2006) (holding erroneously informing an alien that relief in form of waiver of deportation was no longer available denied him meaningful judicial review and reviewing a series of similar holdings by the Court of Appeals for the Second Circuit). The Court notes that the Court of Appeals for the Second Circuit position is a minority position but nonetheless, the Court will indulge in a review of the Defendant's claim

13

under § 1326(d)(2).

Though the Defendant's motion, memoranda, and statements at the hearing are not altogether clear in regards to the evidence and arguments he submits to support a finding that he was deprived of judicial review, the Court concludes that the Defendant advances two grounds. First, in filings made prior to the hearing in this case, the Defendant classified the above summarized argument about mailing as grounds for finding that he was improperly deprived of the opportunity for judicial review. [Doc. 131 at 5]. For the reasons more fully explained above, the Court finds that the Defendant has failed to show any agency or government behavior, intentional or negligent, meant to deny him or denying him the opportunity to seek review. The Defendant's case was not reviewed by the BIA simply because he waited until four days before his Notice of Appeal was due in Virginia to send it on its way, and the Notice, because of its late start, was not received on time.

The Defendant also argues that he was denied judicial review[5] because the immigration judge did not accurately advise him about discretionary relief available under the Immigration and Naturalization Act ("INA"). Specifically, the Defendant argues that he should have been advised of discretionary relief that could be granted by the United States Attorney General under § 212(c) of the INA,[6] [Doc. 131 at 5], and that he should have been advised of the possibility that the

---

[5]The Defendant also ties this failure to advise about discretionary relief to his argument under Section 1326(d)(3) that the proceeding was fundamentally unfair. Because failure to advise is typically addressed under 1326(d)(2) analysis and because the Defendant must met § 1326(d)(2) before proceeding to analysis under § 1326(d)(3), the discretionary relief argument is reviewed under § 1326(d)(2), the judicial review prong.

[6]Under § 212(c) of the INA, codified at 8 U.S.C. § 1182(c), the United States Attorney General could waive deportation for aliens who were in the United States but were eligible for deportation because they had committed an aggravated felony or controlled substance violation. See Pak v. Reno, 196 F.3d 666, 669 (6th Cir. 1999). The enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009-546 (1996),

14

Attorney General would allow him to voluntarily depart the United States under 8 U.S.C. § 1229c, [Doc. 128 at 2].

As to discretionary relief under § 212(c), the Defendant correctly states that the Court of Appeal for the Second Circuit has held that failure to inform an alien may be grounds for finding denial of judicial review. See United States v. Copeland, 376 F.3d 61 (2d Cir. 2004); Lopez, 445 F.3d 90. However, "a majority of circuits have rejected the proposition that there is a constitutional right to be informed of eligibility for– or to be considered for– discretionary relief." United States v. Santiago-Ochoa, 447 F.3d 1015, 1020 (7th Cir. 2006); see Bonhometre v. Gonzales, 414 F.3d 442, 448 n. 9 (3d Cir. 2005)); United States v. Aguirre-Tello, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc); United States v. Lopez-Ortiz, 313 F.3d 225, 231 (5th Cir. 2002) ("[Section] 212(c) relief, because it is available within the broad discretion of the Attorney General, is not a right protected by due process."); Smith v. Ashcroft, 295 F.3d 425, 430 (4th Cir. 2002) ("[T]he discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause."); Oguejiofor v. Attorney Gen. of the United States, 277 F.3d 1305, 1309 (11th Cir. 2002) ("Under our precedent, an alien has no constitutionally-protected right to discretionary relief or to be eligible for discretionary relief."); Escudero-Corona v. INS, 244 F.3d 608, 615 (8th Cir.

_____

extinguished the prospect of such relief for many categories of aliens. Section 440(d) of AEDPA eliminated § 212(c) waivers of deportation for those aliens deportable for having committed, *inter alia,* an aggravated felony or a controlled substance offense. Subsequently, § 304 of IIRIRA repealed § 212(c) and replaced it with a narrower provision called "cancellation of removal." The cancellation of removal provision, codified at INA § 240A(a), the Attorney General lacks discretion to cancel the removal of a lawful permanent resident who has, *inter alia,* been convicted of an aggravated felony. 8 U.S.C. § 1229b(a).

However, the Supreme Court has held that the AEDPA and IIRIRA's repeal is not retroactively applicable to aggravated felons whose convictions, as here, predated the effective date of the repeal. See INS v. St. Cyr, 533 U.S. 289, 297 (2001). Thus, § 212(c) relief could have been available to the Defendant despite the AEDPA or IIRIRA.

2001) (adopting <u>Ashki</u> holding that eligibility for suspension is not a right protected by the Constitution); <u>Ashki v. INS</u>, 233 F.3d 913, 921 (6th Cir. 2000); and <u>United States v. Roque-Espinoza</u>, 338 F.3d at 729-30 (7th Cir. 2003) (reasoning similarly in dicta that "it would be hard to show that the loss of a chance at wholly discretionary relief from removal is the kind of deprivation of liberty or property that the due process clause is designed to protect").

The Defendant's efforts to distinguish the rulings of Court of Appeals for the Sixth Circuit in this area–specifically, <u>Ashki v. INS</u>, 233 F.3d 913 (6th Cir. 2000)–from the majority position is not lost on this Court. The Court recognizes that in <u>Ashki</u> the court found that a defendant "has no constitutionally-protected liberty interest in *obtaining* discretionary relief from deportation," <u>id.</u> at 921 (emphasis added), whereas the Defendant's argument hinges upon an interest in *being advised* that one might possibly attain discretionary relief. In <u>Ashki</u>, the Court of Appeals, borrowing from the Court of Appeals for the Fourth Circuit, explained:

> Eligibility for suspension is not a right protected by the Constitution. Suspension of deportation is rather an 'act of grace' that rests in the 'unfettered discretion' of the Attorney General. Because suspension of deportation is discretionary, it does not create a protectible liberty or property interest. This is true even where the state 'frequently' has granted the relief sought.

<u>Id.</u> (quoting <u>Appiah v. INS</u>, 202 F.3d 704, 709 (4th Cir. 2000)). If suspension of deportation is an 'act of grace' in which a defendant has no constitutionally protected interest, it stands to reason and the Court holds that a defendant does not have a constitutionally protected interest in being advised that such an 'act of grace' could, possibly, be bestowed upon him. <u>See</u> <u>Hasanaj</u>, 2005 WL 1774097, (E.D. Mich 2005) at *4 (reviewing <u>Ashki</u> and <u>Appiah</u> and finding the defendant had no interest in being advised, by his attorney, of discretionary relief under Section 212(c) "because he had no

16

constitutional right to the relief").

Further, the Court finds that other discretionary relief, such as the Attorney General's discretion to allow an alien to voluntarily depart under 8 U.S.C. § 1229c(a), is constitutionally equivalent to discretionary relief under § 212(c). Courts of Appeal that have considered aliens' interest in voluntary departure have similarly concluded that aliens have no constitutionally protected interest in such relief. See Garcia-Mateo v. Keisler, 503 F.3d 698, 700 (8th Cir. 2007) ("Because voluntary departure is a form of relief that is available only in the Attorney General's discretion, there is no constitutionally protected property or liberty interest in such relief.") (internal citations omitted); see also Naeem v. Gonzales, 469 F.3d 33, 38-39 (1st Cir. 2006) (holding that an alien has no protected property or liberty interest in discretionary relief of voluntary departure, reopening, or adjustment of status). The Court acknowledges that the Court of Appeals for the Ninth Circuit and district courts within the Second Circuit have held to the contrary. See United States v. Garcia, 2008 WL 3890167 (E.D.N.Y. 2008) (concluding, under the reasoning of Copeland, 376 F.3d 61, that voluntary departure under § 1229c is equivalent to discretionary relief under § 212(c) and failure to advise an alien of voluntary departure could satisfy § 1326(d)); see also United States v. Alonza-Mendoza, 239 Fed. Appx. 330 (9th Cir. 2007) (finding an alien's due process rights were violated when the immigration judge did not individually inform him of his right to appeal and eligibility for voluntary departure). However, the Court notes that the case law from the Second Circuit relies on the Second Circuit's minority position regarding discretionary waiver which the Court declined to adopt for the reasons more fully explained above. In light of the Court of Appeals for the Sixth Circuit's position in Asiki, it would be contrary to the case law of this Circuit to find a constitutionally protected interest in voluntary departure, when there is no such interest in

17

discretionary relief in this Circuit. It appears to this Court that, in this Circuit, voluntary departure under § 1229c, like discretionary relief under § 212(c) is "an 'act of grace' that rests in the 'unfettered discretion' of the Attorney General," not relief in which an alien has a protected interest.

Based on the foregoing, the Court finds that the Defendant had no constitutionally protected interest in being advised of the possibility that he might be granted discretionary relief or be allowed to voluntarily depart. Accordingly, the Court finds that the Defendant's appearance before the immigration judge and the availability of an appeal to the BIA, which he did not pursue in a timely manner, afforded him an opportunity for judicial review. Thus, the Defendant has not met the criteria contained in Section 1326(d)(2) and his efforts to collaterally attack his prior deportation are not well-taken.

*3. Fundamental Fairness*

As stated above, the Court finds the Defendant has not met either the first or the second prerequisites contained in Section 1326(d). Failure to prove either of these prerequisites is sufficient grounds for barring collateral attack of the deportation order. Further, the Court of Appeals for the Sixth Circuit has not ruled upon the degree of prejudice required to show fundamental unfairness under § 1326(d)(3) and the parties conceded that there is a split among the other Courts of Appeals on this issue. Thus, on the request of the parties, the Court bifurcated the hearing in this matter, [Doc. 130 at 3], and delayed addressing § 1326(d)(3) until after § 1326(d)(1) and (d)(2) had been successfully demonstrated at the first hearing. The parties agreed that this procedure would prevent holding unnecessary arguments on the level of prejudice required to demonstrate fundamental fairness in this Circuit and also prevent holding the sort of 'trial within a hearing' required to address prejudice until the Defendant had established the existence of the other statutory elements.

18

Accordingly because the Court has found that the Defendant has not met the requirements of 1326(d)(1) or the requirements of 1326(d)(2), the Court will not analyze the Defendant's showing under 1326(d)(3).

## B. Collateral Estoppel[7]

Finally, the Government, in the alternative to its above arguments, claims that because the Defendant pled guilty in 2002 to another re-entry charge he is precluded from challenging the present indictment under § 1326(d). [Doc. 124]. However, the Defendant argues that collateral estoppel is not appropriate in the present case because of the differences in a plea and a conviction.

The Defendant cites the Court to United States v. Gallardo-Mendez, 150 F.3d 1240 (10th Cir. 1998), a case in which the Court of Appeals for the Tenth Circuit reasoned that the "factual basis" requirement for plea under Rule 11 of the Federal Rules of Criminal Procedure did not satisfy the "beyond a reasonable doubt" burden of proof required for proving the alienage element of a § 1326 prosecution. The Court of Appeals for the Sixth Circuit has not spoken directly on this issue, and some courts that have examined Gallardo-Mendez have declined to extend its holding, see United States v. Arnett, 327 F.3d 845 (9th Cir. 2003).

---

[7]The Government in presenting its argument refers to res judicata, a term which entails two grounds for preclusion. As the United States Supreme Court has explained:

> "Res judicata" is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it), see Restatement (Second) of Judgments §§ 17-19 (1982); and (2) issue preclusion, long called "collateral estoppel" (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim) . . . .

Baker by Thomas v. General Motors Corp., 522 U.S. 222, 233 n.7 (1998). The argument in this case is for issue preclusion, and thus, for specificity, the Court will use the term collateral estoppel.

Because the Court has found that the Defendant is unable to meet his burden for collateral attack under § 1326(d), the Court need not consider this alternative argument for denying the Defendant the relief he seeks and will decline to do so.

## IV. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing and the parties filings on this motion and after reviewing the relevant legal authorities, the Court finds that the Defendant has not satisfied the criteria contained in 8 U.S.C. § 1326(d) and is not entitled to collaterally attack his 1998 deportation order. As a result, the Defendant's Motion to Dismiss is not well-taken. Therefore, it is **RECOMMENDED** that the Defendant's Motion to Dismiss [**Doc. 120**] be **DENIED**.[8]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[8]Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).