UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| ALFREDO BARBA, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos. | 3:08-CR-46-PLR-CCS |
| | ) | | 3:13-CV-307-PLR |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM AND ORDER

Petitioner Alfredo Barba ("Petitioner"), a federal prisoner, filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 243].[1] He timely filed a motion to amend his original motion filed pursuant to 28 U.S.C. § 2255 [Doc. 245]. Included in the motion to amend, Petitioner filed a memorandum in support of the 2255 Motion [Doc. 245-1]. Both the original motion and the memorandum in support of the 2255 Motion [Docs. 243, 245-1] shall be considered and discussed jointly in this Memorandum Opinion as "the 2255 Motion." Respondent United States of America (the "Government") filed a response in opposition to the 2255 Motion [Doc. 246]. For the reasons stated below, Petitioner's § 2255 motion [Docs. 243, 245-1] will be **DENIED**.

I.  BACKGROUND

Beginning in or about October 2007 and continuing through May of 2008, Petitioner actively participated in a conspiracy to distribute and possess marijuana in the greater Knoxville, Tennessee area [Doc. 172 p. 4]. Calls intercepted on several court authorized Title III wiretaps revealed the Petitioner conspired to receive shipments of marijuana through the mail from Texas

---

[1] All citations to the record are found on the docket of Case No. 3:08-CR-46

for distribution in Knoxville, Tennessee [*Id.*]. Law enforcement learned that Petitioner's organization received more than one thousand kilograms of marijuana in the mail in thirty to forty pound packages that were sent approximately two to three times each week during the duration of the conspiracy [*Id.*]. Intercepted calls also revealed instances where Petitioner directed organization members to deliver and sell marijuana and to collect debts and proceeds of marijuana sales [*Id.* at 5]. Law enforcement discovered Petitioner would then transfer the proceeds from the illegal sale of marijuana back to Texas in order to purchase more marijuana [*Id.*].

On May 27, 2008, a federal grand jury in the Eastern District of Tennessee charged Petitioner, alongside five co-defendants, with conspiracy to distribute and possess with intent to distribute one thousand grams of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One) [Doc. 172 p. 1] and with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Two) [*Id.* at 2]. Petitioner was also charged with the illegal reentry of a deported alien in violation of 8 U.S.C. § 1326(a)-(b) (Count Three) [Doc. 110].

On June 26, 2009, Petitioner pleaded guilty to Counts One and Two pursuant to a plea agreement with the United States [Doc. 172]. As part of the plea agreement, and in exchange for dismissal of Count Three, the parties stipulated, among other things, that "the Court may impose any lawful term of imprisonment up to the statutory maximum" [*Id.* ¶ 2(a)]. Petitioner acknowledged he had "read the indictment, discussed the charges and possible defenses with. . . counsel, and understood[] the crime(s) charged" [Doc. 172 ¶ 3]. Additionally Petitioner stated he was pleading guilty because he was "in fact guilty" [*Id.*]. Petitioner agreed "not to file a direct appeal of [his] conviction(s) or sentence except . . . [in the case of] a sentence imposed above the sentencing guidelines range as determined by the district court" [*Id.* ¶ 10 (a)].

2

Petitioner also "voluntarily waive[d] [his] right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack [his] conviction(s) and/or resulting sentence" except in cases "of ineffective assistance of counsel or prosecutorial misconduct not known to [Petitioner] by the time of the entry of judgment" [*Id.* ¶ 10 (b)]. The District Court subsequently sentenced Petitioner to 210 months of imprisonment [Doc. 212 p. 2].

Petitioner appealed, claiming that the sentence of 210 months, the bottom of his advisory guideline range of 210-262 months, was procedurally and substantively unreasonable. The Court of Appeals disagreed and affirmed [Doc. 239].

On May 31, 2013, Petitioner filed a timely motion pursuant to 28 U.S.C. § 2255 [Doc. 234].

## II. STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Petitioner articulates two grounds of collateral challenge [Docs. 243, 245-1]: (1) Petitioner alleges constitutionally deficient assistance of counsel [Doc. 243 pp. 4 -5] and (2) actual innocence [Doc. 243 p. 23]. For the reasons explained below, neither warrants relief.

3

### A. Claim One: Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *See also, Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner alleges ineffective assistance of counsel under four separate theories, including allegations that trial counsel: (1) misrepresented the terms of the plea agreement [Doc. 243 p. 4];

4

(2) failed to object and challenge a Rule 11 violation [*Id.*]; (3) failed to object to criminal history points erroneously assigned to the Petitioner in the Presentence Report ("PSR") [*Id.*]; and (4) continued to represent the Petitioner after a conflict of interest arose [*Id.* p. 5].

### 1. Counsel's Alleged Misrepresentation of the Terms of the Plea Agreement

Petitioner's first theory of ineffective assistance of counsel alleges his attorney deviated from professional norms when he induced Petitioner, through misrepresentation, to accept a plea with terms different from those originally anticipated [Doc. 245-1]. Specifically, Petitioner alleges counsel advised him that the Government would agree to drop any leadership enhancements if he pleaded guilty and, as a result, the Petitioner would receive a ten year term of imprisonment [*Id.* p. 2]. Petitioner claims that after he accepted the plea, the Government presented the supervisory enhancement to the Court anyway, resulting in a term of imprisonment much greater than the ten years the Petitioner expected [*Id.* pp. 3-6]. Petitioner contends, consequently, that counsel was deficient for his misadvice regarding the terms of the plea agreement [*Id.* p. 6]. Petitioner argues that his acceptance of the plea agreement was based explicitly on counsel's advice regarding the enhancement [*Id.*]. He claims, absent counsel's advisement, he would not have pleaded guilty and would have insisted on going to trial [*Id.*]. It seems to the Court that Petitioner argues, in the alternative, that Counsel—if not defective for misrepresenting the terms of the agreement—was deficient for "failing to negotiate [the] terms into the written plea agreement" itself [*Id.* at 5].

In support of his first assertion—that counsel was deficient for giving incorrect advice regarding the terms of the plea agreement—Petitioner brings the Court's attention to the change of plea hearing transcript [Doc. 245-1 pp. 3-5]. Petitioner contends that the transcript proves there was an agreement regarding the enhancements and argues that because counsel believed in

5

the existence of that agreement, there is a "reasonable probability" that he incorrectly and deficiently advised Petitioner of the possibility of a ten year sentence in exchange for Petitioner's guilty plea [*Id.* p. 6].

The Court rejects this argument. On review of the record, the Court finds there is insufficient proof to establish counsel's belief of a final agreement regarding the enhancement and therefore, insufficient proof to demonstrate a "reasonable probability" that Petitioner's counsel suggested a specific sentence based on that belief. When asked directly by the Court whether counsel had an agreement with the Government that the Petitioner would not be charged as a supervisor, counsel replied, "No… [b]ecause the Government won't do that" [Doc 237 p. 106]. The Government, addressing the same issue, stated "there was no agreement about role enhancements" to which Petitioner's counsel made no direct objection [Id. at 109]. However, even if Petitioner were able to demonstrate a "reasonable probability" that counsel had a reason to advise Petitioner of anything, the Court refuses to find, absent a showing of an actual instance of misadvise on counsel's part, that counsel afforded substandard assistance.

Petitioner's second assertion—that counsel was deficient for failing to negotiate additional terms into the written plea agreement—is insufficient in that Petitioner fails to establish he incurred any prejudice as a result of the alleged deficient assistance. In his plea agreement, Petitioner confirmed that "[t]he plea agreement constitute[d] the full and complete agreement under the parties" [*Id.* ¶ 16]. Petitioner agreed there were "no other agreements…between [him] and the United States" [*Id.*] and that any promises made "before, contemporaneous with, or after the [plea agreement], [were] null and void" [*Id.*]. During his plea colloquy, Petitioner confirmed that counsel had explained all of the terms of the plea agreement to him [Doc 236 p. 6]. Petitioner also confirmed that he understood his right to abandon the plea

6

agreement and continue through to trial [*Id.*]. With knowledge of the terms of the final plea agreement and an understanding that he was free to plead not guilty, Petitioner voluntarily chose to enter a guilty plea on both counts [*Id.* at 15]. Because Petitioner was aware of the terms of the agreement prior to his plea, the Court finds that he was in no way prejudiced by counsel's failure to incorporate any additional terms into the plea agreement.

### 2. Counsel's Alleged Failure to Object and Challenge a Rule 11 Violation

Petitioner's second theory of ineffective assistance of counsel claims his attorney deviated from professional norms by failing to object when the Assistant United States Attorney ("AUSA"), as opposed to the Court, explained the terms of his plea agreement during his plea colloquy [Doc. 236 p. 8]. Petitioner argues that in order to have properly satisfied the Court's obligation under Rule 11(b), the Court itself must have "personally" addressed him [*Id*. at 9]. *See also,* Fed. R. Crim. P. 11(b). Petitioner claims counsel's failure to object to this alleged violation of Rule 11 rendered him ineffective [Doc. 245-1 p. 11]. Further, Petitioner asserts that because the Court never directly advised him of the information required by Rule 11, his guilty plea was "entered unknowingly and unintelligently in [v]iolation of the Constitution" [*Id*. p. 10]. The Court disagrees.

The purpose of Rule 11 is to ensure that a defendant entering a guilty plea or a plea of nolo contendere is apprised of and understands, among other thing, his rights, the nature of the charges before him and the possible penalties he faces. Fed. R. Crim. P. 11(b)(1). "[A]lthough the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *United States v. Sawasky*, 578 F. App'x 475, 478 (6th Cir. 2014) (*quoting McCarthy v. United States*, 394 U.S. 459, 465 (1969). Stated another way,

7

the objective of Rule 11 is to require that a defendant entering a plea does so knowingly, voluntarily and intelligently. Rule 11 does not require, however, that the Court personally address the Petitioner during the recitation of the information required by the rule. The Sixth Circuit has held on many occasions that Rule 11 is satisfied when someone one other than the sentencing judge fully advises the defendant of the terms of the plea agreement in open court. *See United States v. Zumot*, 337 F. App'x 520, 523 (6th Cir. 2009) (holding "a defendant is sufficiently informed that he has waived his right to appeal if the prosecutor, rather than the district court, summarizes the terms of the plea agreement and specifically explains that the defendant agreed to waive his right to appellate review."); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006) (holding that a prosecutor's explanation of terms in a plea agreement in open court satisfied Rule 11); *United States v. McGilvery,* 403 F.3d 361, 362 (6th Cir.2005) (holding that a district court has complied with Rule 11 when, at the court's request, a prosecutor explains the terms of a plea agreement).

Accordingly, the Court finds no violation of Rule 11 here. The Petitioner was properly made aware of all of the information required in Rule 11(b)(1)(G) - (L) when the AUSA explained the terms of the plea agreement before the Court during Petitioner's plea colloquy [Doc. 236 pp. 8 – 14]. Moreover, because Petitioner responded in the affirmative when he was asked by the Court whether he heard and agreed with the AUSA's reading of the plea agreement, the Court refuses to find that the Petitioner's plea was unintelligent and unknowing.

To the extent Petitioner argues counsel was ineffective for failing to challenge the AUSA's reading of the terms of plea agreement, the claim fails. Because it is well settled in the Sixth Circuit that there is no violation of Rule 11 when someone other than the sentencing judge explains the terms of the plea agreement, trial counsel's failure to mount an objection on that

8

ground cannot be characterized as deficient performance. *See e.g.*, *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) ("Counsel cannot be ineffective for failing to object to what was properly done.").

### 3. Counsel's Alleged Failure to Object to Criminal History Points Erroneously Assigned to the Petitioner in the Presentence Report

Petitioner's next theory of ineffective assistance alleges counsel was ineffective for failing to object to four criminal history points erroneously assigned to him in his presentence report ("PSR") [Doc. 245-1 p. 12].

Petitioner contends three of the four points were assigned in error because no certified copies of the judgments for the prior convictions were shown to exist [*Id.*]. Citing *United States v. Warwick*, 149 F. App'x 464 (6th Cir. 2005), Petitioner argues that the Sixth Circuit requires a certified copy of the judgment of conviction to properly assign criminal history points for a prior conviction [*Id.*]. Petitioner claims that, absent these certified copies, the probation officer had nothing but alternative presentence reports to rely on when assigning the points [*Id.*]. He asserts, pursuant to *United States v. Jones*, 453 F.3d 777 (6th Cir. 2006), that prior PSRs are "not among the permissible sources of factual information" that a probation officer can consider when assigning criminal history points [*Id.* at 13]. Petitioner argues that because the probation officer's assignment of the criminal history points under these facts is prohibited in the Sixth Circuit, counsel's failure to object was deficient.

Petitioner further argues that an additional point was improperly assigned to him based on a DUI conviction that occurred more than ten years before the instant offense [*Id.*]. Petitioner argues that because he was sentenced on February 23 of 1998 for his DUI, and was arrested on March 19 of 2008 for the present offense, the DUI offense occurred too long ago to be properly

9

considered as a prior conviction for the purpose of assigning points on the PSR [*Id.*]. Petitioner again faults counsel for failing to object to this incorrect assignment of points [*Id.* at 14].

With regard to Petitioner's first assertion—that three points were assigned in error because no certified copies of the judgments for the prior convictions existed—the Court disagrees. In *Warwick*, the Court noted that "no precedent… requires documentary evidence of a conviction in order for the district court to include the conviction in a defendant's criminal history." 149 F. App'x at 466. In ruling on *Warwick*, the Court only required that the prior conviction was proven to exist. *Id*. In addressing Petitioner's claim that prior PSRs are not permissible sources of information a probation officer can consider in proving a conviction, the Court need only turn to the footnotes in *Warwick*. 149 F. App'x at 468 n. 1. While the Petitioner is correct that the Sixth Circuit has previously held a PSR cannot be considered in certain circumstances, the *Warwick* Court clarifies that this restriction is limited to determining the applicability of the Armed Career Criminal Act, and therefore irrelevant when determining whether the Government has provided enough evidence to prove to the Court that the conviction merely exists. *Id*.

Regarding Petitioner's second assertion—that an additional point was improperly assigned to him based on a DUI conviction that occurred more than ten years before the instant offense—the Court again disagrees. The applicable statute does indicate that, "[a] sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted" toward a defendant's criminal history. U.S.S.G §4A1.2(e). Accordingly, to resolve whether the points were assigned in error, the Court must determine whether the date the DUI sentence was imposed was within ten years of the date the present offense began. Because the Petitioner was sentenced February 23 of 1998 and admitted in his plea agreement that the current

10

offense began "in or about October 2007," the Court finds Petitioner has failed to show more than 10 years has passed. Thus the criminal points were correctly assigned to the Petitioner in his PSR.

As previously stated, this Court cannot find Counsel to be ineffective for failing to object to what was properly done. Because Petitioner cannot demonstrated that the criminal history points were assigned in error, he cannot consequently show that counsel was ineffective for failing to object to the assignments. For that reason, Petitioner's claim of ineffective assistance under this theory fails.

### 4. Counsel's Continued Representation after an Alleged Conflict of Interest

Petitioner's final theory is that counsel afforded deficient assistance by continuing to represent the Petitioner after a conflict of interest arose which adversely affected the attorney's ability to perform. This argument is without merit

By way of background, Petitioner was originally indicted for the sole charge of illegal reentry [Doc. 110]. For that charge, Petitioner retained attorney Sean Lewis to represent him [*Id.*]. When the Petitioner was subsequently charged with drug conspiracy and money laundering, Petitioner retained additional counsel, attorney Phillip Lomonaco. In May of 2009, attorney Sean Lewis filed a motion to withdraw as counsel, citing irreconcilable differences and a deterioration in the attorney-client relationship [Doc. 151]. The Court denied the motion [Doc. 160], deciding instead that Mr. Lewis would continue to represent the Petitioner as co-counsel alongside Mr. Lomonaco on a court-appointed basis [Doc 233 p. 28]. The Court specified that the scope of Mr. Lewis' representation would be limited to the illegal reentry charge [*Id.*]. Petitioner subsequently entered into a plea agreement with the United States which, in part, dropped the illegal reentry charge in exchange for Petitioner's guilty plea on the drug conspiracy

11

and money laundering charges [Doc. 172]. Attorney Lewis, having resolved the illegal reentry charge, again moved to withdraw as counsel [Doc. 174]. The Court granted the motion [Doc. 175].

Petitioner now contends that his sixth amendment rights were violated when attorney Lewis proceeded in his representation after he confirmed a conflict of interest did in fact exist [Doc. 245-1 p. 18]. Moreover, Petitioner claims that Mr. Lomonaco was "tainted" by the conflict of interest that existed between Mr. Lewis and the Petitioner and, as a result, Mr. Lomonaco's performance was adversely affected [*Id*.].

The Court finds no merit in these claims. As previously stated, a petitioner who claims his attorney was ineffective must satisfy the two-part test set out in *Strickland.* 466 U.S. at 687. He first must show that some specific act or omission by his attorney was deficient as measured by prevailing professional norms. *Rompilla*, 545 U.S. at 380. The burden is upon the Petitioner to overcome the presumption that counsel provided effective assistance. 466 U.S. at 689. If he satisfies the foregoing requirements, Petitioner must then show that there exists "a reasonable probability that, but for [the deficient representation], the result of the proceedings would have been different." *Id*. at 694. Both prongs of the *Strickland* test must be satisfied. *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009).

The Petitioner in the present case has failed to satisfy the first prong of *Strickland* in that he fails to make specific allegations of any act or omission by Mr. Lewis or Mr. Lomonaco that could amount to ineffective assistance of counsel due to a "conflict of interest". The Petitioner offers no proof, aside from unsupported assertions, that Mr. Lewis was ineffective or that Mr. Lomonaco was "tainted" by an existing conflict of interest. Absent an actual showing of defective assistance, Petitioner's claim fails. The Court need not reach the question of whether

any prejudice existed because Petitioner's insufficient showing of deficient performance obviates the need to do so. *See, Strickland*, 466 U.S. at 697 (finding "no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one").

### B. Claim Two: Actual Innocence

Petitioner's second ground of collateral attack claims that newly discovered evidence will prove he is actually innocent of the charged offense [Doc. 245-1 p. 19].

A petitioner can substantiate a claim of actual innocence by showing that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Phillips v. United States*, 734 F.3d 573, 582 (6th Cir. 2013) (quoting *Wooten v. Cauley*, 677 F.3d 303, 307-08 (6th Cir. 2012)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

Petitioner now offers three sworn affidavits from co-defendants Katrina Souto, Veronica Belmares and Alejandro Barba that provide the Court with testimony that Petitioner did not act in a supervisory role during the duration of the drug conspiracy [Docs. 245-2, 245-3, 245-4]. Petitioner claims that this new evidence will prove that he is innocent [Doc. 245-1]. Moreover, Petitioner suggests that, in consideration of this new evidence, the Court should lift the supervisor enhancement since there is no longer a factual basis to prove he was in fact a supervisor [*Id.*].

The Court notes that Petitioner raised the issue of the supervisor role enhancement on direct appeal [Doc. 239]. In determining whether the enhancement was proper, the Sixth Circuit

13

Case 3:08-cr-00046-PLR-CCS Document 269 Filed 04/22/16 Page 13 of 15 PageID #: 1408

reviewed, among other things, Petitioner's "exercise of decision-making authority, the nature of [his] participation in the commission of the offense, [his] recruitment of accomplices. . . [his] degree of participation in planning or organizing the offense…, and the degree of control and authority the [Petitioner] exercised over others" [*Id*. p. 3]. The Sixth Circuit affirmed the district court's ruling, finding sufficient evidence to sustain the enhancement [*Id*.]. It is well established that absent exceptional circumstances, such as an intervening change of law, a § 2255 motion cannot be used to relitigate issues decided on appeal. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *DuPont v. United States*, 76 F.3d 108, 110–11 (6th Cir. 1996). Because Petitioner has failed to identify any such exceptional circumstance in the current case, the Court finds that it lacks authority to review the claim. To the extent that Petitioner argues his co-defendant's affidavits are new evidence that constitute exceptional circumstances, the Court disagrees. The Court finds the affidavits lack credibility and are thus insufficient to overcome existing bars on the relitigation of claims. For the foregoing reasons, the Court finds Petitioner's second ground for collateral attack fails as a matter of law.

### III. REQUEST FOR EVIDENTIARY HEARING

While not formally making a motion for an evidentiary hearing, Petitioner requests a hearing throughout his 2255 Motion [Doc 245-1 pp. 3, 6, 11, 15, 18, and 20]. Under Rule 8 of the rules governing § 2255 proceedings in United States District Courts (the "§ 2255 Rules"), courts must determine, based on a review of the answer and the record, whether an evidentiary hearing is required. *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) (quoting *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013)). The burden to show an entitlement to an evidentiary hearing is relatively light, but must offer more than mere assertions of innocence. *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (quoting *Turner v.United States*,

183 F.3d 474, 477 (6th Cir. 1999)). For example, a petitioner is entitled to an evidentiary hearing where he presents "a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it." *Huff*, 734 F.3d at 707 (quoting *Valentine*, 488 F.3d at 334); *see also Pola*, 778 F.3d at 534 (noting an evidentiary hearing would be required where affidavits directly contradicted each other regarding whether petitioner had requested counsel to file a notice of appeal). In contrast, an evidentiary hearing is not required where the record conclusively shows a petitioner is entitled to no relief. *Huff*, 734 F.3d at 607 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Petitioner has not identified any material factual dispute requiring resolution by way of an evidentiary hearing. Further, for the reasons discussed in preceding sections, the Court finds the undisputed record conclusively precludes collateral relief. Accordingly, Petitioner's requests for an evidentiary hearing [Doc 245-1 pp. 3, 6, 11, 15, 18, and 20] will be **DENIED** as moot.

### IV. CONCLUSION

For the reasons stated herein, the Court concludes, on the basis of the record before it, that Petitioner is not entitled to relief. Petitioner's Motion [Doc. 243], therefore, will be **DENIED**. Petitioner's request for an evidentiary hearing will be **DENIED** as moot.

**IT IS SO ORDERED.**

**ENTER: April 22, 2016**

_____
UNITED STATES DISTRICT JUDGE